FILED

2014 MAY -9  PM 4:38

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2014 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>MARCELINO ARREDONDO-SANCHEZ,<br>   aka "Chalino,"<br>NABHAN ISA,<br>   aka "Arab,"<br>   aka "Japonesa,"<br>ALEJANDRO MORENO-MEZA,<br>   aka "Paisano,"<br>CAMILO BARRAZA-TORRES,<br>   aka "Carpintero,"<br>SANTOS CARLOS GARCIA-RODRIGUEZ,<br>MICHAEL THOMAS CARRANZA,<br>   aka "Cholo,"<br>BIRGILIO FLORES,<br>MIGUEL ANGEL FLORES,<br>   aka "Mikey,"<br>EDGAR BELTRAN,<br>   aka "Guero,"<br>FNU LNU,<br>   aka "Chino,"<br>JOSE VALDEZ ANAYA, and<br>CECILIA GUADALUPE YUCUPICIO,<br><br>        Defendants. | CR No. CR 14 00267<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii): Distribution of Methamphetamine; 21 U.S.C. § 856(a)(1): Using and Maintaining a Drug-Involved Premises; 21 U.S.C. § 860a: Possession with Intent to Distribute Methamphetamine on Premises in which a Juvenile is Present and Resides; 18 U.S.C. § 2(a): Aiding and Abetting] |

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

A.   OBJECTS OF THE CONSPIRACY

Beginning on an unknown date, and continuing to on or about August 6, 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendants MARCELINO ARREDONDO-SANCHEZ, also known as ("aka") "Chalino" ("ARREDONDO"), NABHAN ISA, aka "Arab," aka "Japonesa" ("ISA"), ALEJANDRO MORENO-MEZA, aka "Paisano" ("MORENO-MEZA"), CAMILO BARRAZA-TORRES, aka "Carpintero" ("BARRAZA"), SANTOS CARLOS GARCIA-RODRIGUEZ ("GARCIA"), MICHAEL THOMAS CARRANZA, aka "Cholo" ("CARRANZA"), BIRGILIO FLORES ("BIRGILIO"), MIGUEL ANGEL FLORES, aka "Mikey" ("MIGUEL"), EDGAR BELTRAN, aka "Guero" ("BELTRAN"), First Name Unknown, Last Name Unknown, aka "Chino" ("CHINO"), JOSE VALDEZ ANAYA ("ANAYA"), and CECILIA GUADALUPE YUCUPICIO ("YUCUPICIO"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally (a) distribute; (b) possess with intent to distribute; and (c) manufacture (i) at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, and (ii) at least five kilograms of a  mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

B.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1.    Defendant ARREDONDO would arrange for the shipment of large quantities of methamphetamine and cocaine from his suppliers in Mexico and would resell those drugs to brokers located in Southern California, in and around Fresno, California, and in and around Chicago, Illinois.

2.    Defendant MORENO-MEZA would send large quantities of methamphetamine and cocaine from Mexico to defendant ARREDONDO and defendant ARREDONDO's associates in Southern California.

3.    Defendant ISA would sell large quantities of pseudoephedrine/ephedrine to defendants ARREDONDO and MORENO-MEZA and their co-conspirators for use in the large-scale production of methamphetamine, and would purchase cocaine and marijuana from defendant ARREDONDO and resell it in Chicago and other markets.

4.    Defendant BARRAZA would assist defendant ARREDONDO with the distribution of cocaine.

5.    Defendant GARCIA would act as defendant ARREDONDO's proxy in Southern California, operating drug stash-houses and interacting with defendant ARREDONDO's drug customers on defendant ARREDONDO's behalf.

6.    Defendant CARRANZA would purchase methamphetamine from defendant ARREDONDO for resale in Southern California.

7.    Defendants BIRGILIO and MIGUEL would order large quantities of methamphetamine from defendant ARREDONDO and then resell those drugs in Fresno, California.

8.    Defendants BELTRAN, ANAYA, YUCUPICIO, and CHINO would assist defendant GARCIA by storing drugs and drug proceeds at defendant ARREDONDO's Southern California stash locations.

C.    OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, on or about the following dates, defendants ARREDONDO, ISA, MORENO-MEZA, BARRAZA, GARCIA, CARRANZA, BIRGILIO, MIGUEL, BELTRAN, CHINO, ANAYA, and YUCUPICIO, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, including but not limited to the following:

1.    On November 17, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told someone whom he thought was a drug customer but was actually a confidential government informant (the "CI") that defendant ARREDONDO was interested in selling drugs to one of the CI's customers and that defendant ARREDONDO was looking for another stash house to use to prepare drug shipments.

2.    On December 4, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told the CI that defendant ARREDONDO was still looking to acquire a stash house for the purpose of storing drugs and preparing drug deliveries and was looking forward to meeting with the CI soon to arrange future drug sales.

3

3.   On December 13, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told an unidentified co-conspirator ("UCC") ("Unidentified Male-1" or "UM-1") that defendant ARREDONDO was having difficulty fulfilling UM-1's drug order, and that defendant ARREDONDO did not like to discuss drug business over the telephone.

4.   On December 13, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told a UCC ("UM-30") that one of defendant ARREDONDO's customers in Chicago owed defendant ARREDONDO a large drug debt.

5.   On December 13, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told UM-30 that defendant ARREDONDO owed a large debt to his drug suppliers in Mexico, and that defendant ARREDONDO was having difficulty collecting large debts, including a $550,000 debt, from his own customers.

6.   On December 13, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told UM-30 that defendant ARREDONDO was only temporarily working in Southern California to carry out drug deals and make money.

7.   On December 14, 2011, defendant MORENO-MEZA, using coded language in a telephone conversation, asked defendant ARREDONDO whether defendant ARREDONDO needed any more methamphetamine from defendant MORENO-MEZA to resell, and defendant MORENO-MEZA encouraged defendant ARREDONDO to generate bigger profits to remit to defendant MORENO-MEZA.

8.   On December 14, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told defendant MORENO-MEZA

4

that defendant ARREDONDO still had 97 pounds of methamphetamine available for resale, and that defendant ARREDONDO had converted 50 units of a liquid containing methamphetamine into 114 pounds of crystal methamphetamine for resale.

9.   On December 15, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told a UCC ("UM-199") that defendant ARREDONDO was selling pound-quantities of methamphetamine at the wholesale price of $8,500 per pound, and confirmed that he had 97 pounds of methamphetamine available for sale.

10.  On December 15, 2011, defendant CHINO, using coded language in a telephone conversation, told defendant ARREDONDO that defendant GARCIA was delivering drugs to one of defendant ARREDONDO's customers.

11.  On December 15, 2011, defendant GARCIA, using coded language in a telephone conversation, told defendant ARREDONDO that one of defendant ARREDONDO's customers recently visited one of defendant ARREDONDO's stash houses to pick up three pounds of methamphetamine, but was dissatisfied at the quality of methamphetamine that defendant ARREDONDO had available.

12.  On December 16, 2011, defendant ARREDONDO, using coded language in a telephone conversation, instructed defendant CHINO to tell defendant GARCIA to move drugs out of defendant GARCIA's residence, so that defendant GARCIA would be less susceptible to law enforcement interference.

13.  On December 17, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told a UCC ("UCC-1") that defendant ISA owed defendant ARREDONDO a drug debt of $550,000.

14.   On December 17, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told defendant GARCIA that defendant ARREDONDO was preparing to go to Fresno to negotiate a long-term methamphetamine deal with defendant BIRGILIO.

15.   On December 18, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told a UCC ("UCC-2") that defendant ARREDONDO was going to meet in Fresno with defendant BIRGILIO the next day to discuss a potential long-term relationship, in which defendant ARREDONDO would supply defendant BIRGILIO with large quantities of methamphetamine, and that defendant ARREDONDO might need to obtain a vehicle with a hidden compartment to facilitate transporting the methamphetamine to Fresno.

16.   On December 18, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told defendant BIRGILIO that defendant ARREDONDO was charging $8,500 per pound of methamphetamine.

17.   On December 19, 2011, defendant BELTRAN, using coded language in a telephone conversation, told defendant ARREDONDO that defendant CARRANZA told defendant BELTRAN that several of defendant CARRANZA's customers recently complained about the quality of the drugs that defendant ARREDONDO had supplied to defendant CARRANZA.

18.   On December 19, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told defendant BELTRAN that defendant BIRGILIO planned to order 10 pounds of methamphetamine from defendant ARREDONDO.

19.   On December 20, 2011, defendant ARREDONDO, using coded language in a telephone conversation, told defendant CHINO to work

1  with defendant GARCIA to prepare a drug sample to send to defendant

2  BIRGILIO to help persuade defendant BIRGILIO to do future drug

3  business with defendant ARREDONDO.

4      20.  On December 21, 2011, defendant ARREDONDO, using coded

5  language in a telephone conversation, told defendant MORENO-MEZA

6  that defendant ARREDONDO had a customer in Fresno and that several

7  of defendant ARREDONDO's customers had complained about the quality

8  of defendant MORENO-MEZA's drug supply.

9      21.  On December 21, 2011, defendant ARREDONDO, using coded

10  language in a telephone conversation, discussed defendant ISA with

11  defendant MORENO-MEZA.

12      22.  On December 21, 2011, defendant ARREDONDO, using coded

13  language in a telephone conversation, told defendant MORENO-MEZA

14  that defendant ARREDONDO recently converted a shipment of a liquid

15  containing methamphetamine into 114 pounds of "crystal"

16  methamphetamine.

17      23.  On December 21, 2011, defendant MORENO-MEZA, using coded

18  language in a telephone conversation, advised defendant ARREDONDO to

19  not mix lower-quality methamphetamine with the higher-quality

20  methamphetamine that defendant MORENO-MEZA provided.

21      24.  On January 10, 2012, defendant ARREDONDO, using coded

22  language in a telephone conversation, told defendant GARCIA that

23  defendant ARREDONDO was overseeing subordinates loading drugs into a

24  delivery vehicle with a hidden compartment.

25      25.  On January 10, 2012, defendant ARREDONDO, using coded

26  language in a telephone conversation, instructed defendant GARCIA to

27  transfer drugs between two of defendant ARREDONDO's stash houses.

28

26.   On January 10, 2012, defendant ARREDONDO, using coded language in a telephone conversation, instructed defendant BELTRAN on how to avoid phone interception by law enforcement.

27.   On January 22, 2012, defendant ARREDONO, using coded language in a telephone conversation, told defendant BELTRAN that defendant ARREDONDO was preparing defendant CARRANZA to inspect a methamphetamine delivery.

28.   On January 24, 2012, defendant ARREDONDO, using coded language in a telephone conversation, told defendant GARCIA that defendant ARREDONDO was trying to get in touch with defendant CARRANZA to do a five-pound methamphetamine deal, and that defendant ARREDONDO was going to Fresno to visit other drug customers.

29.   On January 24, 2012, defendant GARCIA, using coded language in a telephone conversation, told defendant BELTRAN that defendant ARREDONDO wanted defendant CARRANZA to inspect some of defendant ARREDONDO's available drugs and decide on a quick transaction, or else defendant ARREDONDO would have to sell those drugs to a different customer.

30.   On January 24, 2012, defendant BELTRAN, using coded language in a telephone conversation, told defendant GARCIA that defendant CARRANZA would be visiting one of defendant ARREDONDO's stash houses to inspect the drugs.

31.   On January 25, 2012, defendant GARCIA, using coded language in a telephone conversation, instructed defendant BELTRAN to tell defendant CARRANZA to meet with defendant ARREDONDO at a residential drug stash house that defendant ARREDONDO maintained on

Grape Street in Los Angeles, California (the "Grape Street Stash House") to discuss a drug deal.

32. On January 25, 2012, defendant GARCIA, using coded language in a telephone conversation, asked defendant ANAYA whether defendant ARREDONDO had completed a drug transaction with defendant CARRANZA.

33. On January 25, 2012, defendant ARREDONDO, using coded language in a telephone conversation, told defendant GARCIA that defendant CARRANZA returned some drugs that defendant ARREDONDO sold to defendant CARRANZA.

34. On January 25, 2012, defendant GARCIA, using coded language in a telephone conversation, told defendant BELTRAN that defendant ARREDONDO sold a pound of methamphetamine to defendant CARRANZA, that defendant CARRANZA owed money to defendant ARREDONDO, and that defendant BELTRAN should be ready to transfer further drug shipments to defendant CARRANZA.

35. On February 2, 2012, defendant ARREDONDO, using coded language in a telephone conversation, directed a CI to give defendant ARREDONDO's phone number to someone who defendant ARREDONDO believed was an associate of the CI and a drug dealer in Chicago.

36. On February 3, 2012, defendant BIRGILIO, using coded language in a telephone conversation, told defendant GARCIA that defendants GARCIA and ARREDONDO needed to be ready to immediately supply one of defendant BIRGILIO's drug customers, or risk being too slow to maintain that customer's interest.

37. On February 25, 2012, defendant ARREDONDO, using coded language in a telephone conversation, discussed with UCC Victor Torres ("Torres") the fact that defendant BIRGILIO was mixing defendant BIRGILIO's methamphetamine with low-quality material.

38. On February 25, 2012, defendant ARREDONDO, using coded language in a telephone conversation, told Torres that defendant BIRGILIO still owed defendant ARREDONDO a large debt for the 19 pounds of methamphetamine that defendant ARREDONDO previously provided to defendant BIRGILIO.

39. On March 1, 2012, defendant MIGUEL, using coded language in a telephone conversation, told defendant ARREDONDO that defendant MIGUEL wanted to arrange a methamphetamine purchase with defendant ARREDONDO since defendant MIGUEL would soon be in defendant ARREDONDO's neighborhood.

40. On March 1, 2012, defendant MIGUEL, using coded language in a telephone conversation, told defendant ARREDONDO that defendant MIGUEL was willing to pay defendant ARREDONDO in cash for a new drug order.

41. On March 1, 2012, defendant ARREDONDO, using coded language in a telephone conversation, told defendant MIGUEL that defendant ARREDONDO could sell a pound of methamphetamine to defendant MIGUEL in exchange for $9,500.

42. On March 5, 2012, defendant ISA, using coded language in a telephone conversation, confirmed with defendant ARREDONDO that defendant ISA had recently overseen a large shipment of ephedrine into Mexico for use by defendant ARREDONDO and defendant ARREDONDO's co-conspirators in manufacturing methamphetamine.

43.  On March 5, 2012, defendant ISA, using coded language in a telephone conversation, told defendant ARREDONDO that defendant ISA would meet with defendant ARREDONDO soon in Mexico to discuss future drug business.

44.  On March 5, 2012, defendant ARREDONDO, using coded language in a telephone conversation, told a UCC ("UM-2505")  that defendant ARREDONDO would soon be conducting drug business in Guatemala.

45.  On March 6, 2012, defendant ISA, using coded language in a telephone conversation, told defendant ARREDONDO that defendant ISA was interested in purchasing cocaine for resale from defendant ARREDONDO.

46.  On March 6, 2012, defendant ARREDONDO, using coded language in a telephone conversation, contacted defendant BARRAZA to get defendant BARRAZA's assistance in supplying cocaine to defendant ISA.

47.  On March 7, 2012, defendant ARREDONDO, using coded language in a telephone conversation, confirmed to defendant ISA that defendant ARREDONDO was making arrangements to deliver cocaine to defendant ISA.

48.  On March 7, 2012, defendant ARREDONDO, using coded language in a telephone conversation, told defendant ISA that defendant ARREDONDO was prepared to supply defendant ISA with cocaine at the price of $21,000 per kilogram, and told defendant ISA that his cocaine was of high quality.

49.  On March 7, 2012, defendant ISA, using coded language in a telephone conversation, asked defendant ARREDONDO to ask his

suppliers if they had 15-20 kilograms of cocaine available for sale
at the price of $20,500 per kilogram.

50.   On March 8, 2012, at one of defendant ARREDONDO's stash-
house residences located on Alder Avenue in Fontana, California,
defendant BARRAZA met with defendant ARREDONDO to discuss defendant
ARREDONDO's agreement to supply cocaine to defendant ISA.

51.   On March 8, 2012, defendant CARRANZA, using coded language
in a telephone conversation, told defendant ARREDONDO that defendant
CARRANZA owed defendant ARREDONDO $10,550 in drug payments, and that
defendant CARRANZA wanted defendant ARREDONDO to prepare another
drug delivery for defendant CARRANZA.

52.   On March 8, 2012, defendant CARRANZA, using coded language
in telephone conversations, made arrangements with defendant
ARREDONDO for defendant CARRANZA to pick up a drug delivery from
defendant ANAYA.

53.   On March 8, 2012, defendant ARREDONDO, using coded
language in a telephone conversation, told defendant GARCIA that
defendant ARREDONDO would direct defendant ANAYA to deliver drugs to
defendant CARRANZA

54.   On March 8, 2012, defendant ARREDONDO, using coded
language in a telephone conversation, directed defendant YUCUPICIO
to deliver methamphetamine to, and collect drug purchase money from,
defendant CARRANZA at the Grape Street Stash House.

55.   On March 8, 2012, defendant GARCIA, using coded language
in a telephone conversation, confirmed to defendant ARREDONDO that
defendant CARRANZA's couriers picked up a methamphetamine delivery,

1  and dropped off drug purchase money, at the Grape Street Stash
2  House.

3      56.  On March 9, 2012, defendant ISA, using coded language in a
4  telephone conversation, told defendant ARREDONDO that one of
5  defendant ISA's drug associates in New York was ready to do a large
6  volume of cocaine business with defendant ARREDONDO at the price of
7  $21,000 per kilogram.

8      57.  On April 27, 2012, defendant GARCIA, using coded language
9  in a telephone conversation, assured defendant ARREDONDO that only
10  defendant GARCIA and defendant ANAYA had access to drugs stored at
11  the Grape Street Stash House.

12      58.  On April 27, 2012, defendant ARREDONDO, using coded
13  language in a telephone conversation, told defendant GARCIA that
14  defendant CARRANZA was complaining that defendant ARREDONDO's drug
15  deliveries were short of what defendant CARRANZA was ordering.

16      59.  On April 27, 2012, defendant ARREDONDO, using coded
17  language in a telephone conversation, told defendant GARCIA to keep
18  closer watch over one of defendant GARCIA's subordinates to further
19  ensure that defendant CARRANZA would receive the full amount of his
20  drug order from defendant ARREDONDO.

21      60.  On April 29, 2012, defendant ARREDONDO, using coded
22  language in a telephone conversation, told defendant GARCIA to look
23  for one of defendant ARREDONDO's Fresno-based customers to come to
24  the Grape Street Stash House to pick up a drug delivery.

25      61.  On April 30, 2012, defendant GARCIA, using coded language
26  in a telephone conversation, told defendant ARREDONDO that defendant
27  ARREDONDO's Fresno-based drug customer would be arriving at the
28

Grape Street Stash House to pick up a drug delivery from defendant GARCIA.

62.  On April 30, 2012, at the Grape Street Stash House, defendants GARCIA, ANAYA, and YUCUPICIO possessed with intent to distribute approximately 273 grams of methamphetamine, as well as possessed a hidden digital scale,

63.  On April 30, 2012, at the Grape Street Stash House, one of defendant ARREDONDO's drug customers possessed approximately $10,800 in cash for the purpose of purchasing drugs.

64.  On April 30, 2012, at the Grape Street Stash House, defendant YUCUPICIO attempted to flush drugs and drug paraphernalia down the toilet in order to avoid law enforcement detection.

65.  On May 23, 2012, defendant ARREDONDO, using coded language in a telephone conversation, discussed his methamphetamine prices with Torres, and told Torres that defendant ARREDONDO wanted to become a regular drug supplier for Torres in the future.

66.  On June 6, 2012, defendant ARREDONDO, using coded language in a telephone conversation, negotiated with Torres on the price of a pound of methamphetamine to sell to Torres, and instructed Torres to come to one of defendant ARREDONDO's stash houses to retrieve it.

67.  On June 6, 2012, one of defendant ARREDONDO's subordinates, acting on defendant ARREDONDO's instructions, delivered approximately 436.1 grams of methamphetamine to Torres at one of defendant ARREDONDO's stash houses.

68.  On June 6, 2012, defendant ARREDONDO, using coded language in telephone conversations, talked to Torres about Torres' recent arrest while transporting drugs that defendant ARREDONDO had just

14

sold to him and instructed Torres on how to prevent law enforcement officials from discovering those drugs.

69. On June 6, 2012, defendant ARREDONDO, using coded language in a telephone conversation, assured Torres that, notwithstanding Torres' arrest, defendant ARREDONDO would attempt to continue supplying Torres with methamphetamine.

70. On July 8, 2012, defendant ARREDONDO, using coded language in a text message, told a CI that defendant ARREDONDO's subordinates were prepared to supply the CI with drugs from a stash house located in Pomona, California.

71. On July 12, 2012, defendant ARREDONDO, using coded language in a text message, told a CI to call him to talk about the drugs available for resale.

72. On July 31, 2012, defendant ARREDONDO, using coded language in a text message, confirmed with a CI that the CI wanted to purchase three pounds of methamphetamine from defendant ARREDONDO, and told the CI that defendant ARREDONDO would instruct his subordinate to prepare that shipment.

73. On August 1, 2012, defendant ARREDONDO, using coded language in a telephone conversation, told a CI that defendant GARCIA would be available in the afternoon to coordinate a methamphetamine delivery to the CI.

74. On August 1, 2012, defendant GARCIA, using coded language in a telephone conversation, introduced himself as defendant ARREDONDO's associate to a CI and told the CI that defendant GARCIA would instruct a subordinate to be ready on the next day to handle the CI's methamphetamine order.

75.   On August 2, 2012, defendant GARCIA, using coded language in a telephone conversation, told a CI that defendant GARCIA's subordinate was preparing to meet the CI later that day at a location near the Los Angeles International Airport to complete a drug transaction.

76.   On August 2, 2012, defendant GARCIA, using coded language in a telephone conversation, told a CI that defendant GARCIA's subordinate was nervous about meeting the CI in public to complete their drug transaction, and asked the CI to instead complete the transaction at one of defendant ARREDONDO's stash houses.

77.   On August 3, 2012, defendant ARREDONDO, using coded language in a telephone conversation, told a CI that although the CI had been unable until that point to meet with defendant ARREDONDO's subordinates to complete their transaction, defendant ARREDONDO still wanted to finalize a three-pound methamphetamine transaction with the CI.

1

COUNT TWO

2
   [21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii); 18 U.S.C. § 2(a)]

3
   On or about April 30, 2012, in Los Angeles County, within the

4
Central District of California, defendants MARCELINO ARREDONDO-

5
SANCHEZ, also known as "Chalino," JOSE VALDEZ ANAYA, and CECILIA

6
GUADALUPE YUCUPICIO, each aiding and abetting the other, knowingly

7
and intentionally possessed with intent to distribute a mixture and

8
substance containing at least 50 grams, that is, approximately 273

9
grams, of methamphetamine, a Schedule II controlled substance.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THREE

[21 U.S.C. § 856(a)(1); 18 U.S.C. § 2(a)]

Beginning on an unknown date, and continuing until on or about April 30, 2012, in Los Angeles County, within the Central District of California, defendants MARCELINO ARREDONDO-SANCHEZ, also known as "Chalino," JOSE VALDEZ ANAYA, and CECILIA GUADALUPE YUCUPICIO, each aiding and abetting the other, knowingly and intentionally opened, leased, rented, used, and maintained a place, namely, a residence located at 8729 Grape Street in Los Angeles, California, for the purpose of distributing a controlled substance, namely, methamphetamine, a Schedule II controlled substance.

COUNT FOUR

[21 U.S.C. § 860a; 18 U.S.C. § 2(a)]

Beginning on an unknown date, and continuing until on or about April 30, 2012, in Los Angeles County, within the Central District of California, defendants JOSE VALDEZ ANAYA and CECILIA GUADALUPE YUCUPICIO, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), at a premises at which an individual under the age of 18 years of age, at the time of that possession, resided and was present.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii); 18 U.S.C. § 2(a)]

On or about June 6, 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendant MARCELINO ARREDONDO-SANCHEZ, also known as "Chalino," knowingly and intentionally possessed with intent to distribute, and intentionally aided and abetted the possession with intent to distribute, at least 50 grams, that is, approximately 436.1 grams, of methamphetamine, a Schedule II controlled substance.

A TRUE BILL

/S/
_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

KEVIN M. LALLY
Assistant United States Attorney
Chief, OCDETF Section

ROB B. VILLEZA
Assistant United States Attorney
Deputy Chief, OCDETF Section

CHRISTOPHER K. PELHAM
Assistant United States Attorney
OCDETF Section